UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br>   *Plaintiff*,<br><br>   v.<br><br>ERIC J. BUCHANAN,<br>MICHELLE BROWN,<br>KAYLA BROWN,<br>MEISHA GOODLOW, and<br>LISA JORDAN,<br>   *Defendants*. | CASE NO: 1:08-CV-0100-JMS-RLY |

**FINDINGS OF FACTS AND CONCLUSIONS OF LAW**

**I.   Findings of Fact**

   **A.   Stipulated facts.**

The parties have stipulated to the following facts:

1. Lisa Jordan had automobile insurance (Policy No. 1274-973-14) with State Farm Mutual Automobile Insurance Company in effect on January 18, 2007.

2. Lisa Jordan's policy with State Farm Mutual Automobile Insurance Company included her 2002 Pontiac Grand Am.

3. Lisa Jordan's 2002 Grand Am was involved in a motor vehicle collision with another vehicle containing Michele Brown, Kayla Brown and Meisha Goodlow on January 18, 2007.

4. Eric J. Buchanan was driving Jordan's Grand Am when the collision occurred.

5. The 2002 Pontiac Grand Am was reported stolen on January 18, 2007 at 4:58 p.m.

6. Officer Eli McAllister was dispatched to speak with Lisa Jordan at 6:00 p.m. on January 18, 2007.

**B.     The Court's Findings of Fact**

1. The policy in question states:

**LIABILITY COVERAGE**

*Insured* means:
. . .
any other person for his or her use of:
    a.  *your car*;
    b.  a *newly acquired car*;
    c.  a *temporary substitute car*; or
    d.  a *trailer* while attached to a *car* described in a., b., or c. above.
Such vehicle must be used within the scope of *your* consent . . . .

2. Prior to the collision on January 18, 2007, Lisa Jordan and Buchanan were involved romantically.

3. Their relationship began in September 2006.

4. During their relationship, Buchanan drove Lisa Jordan's Grand Am with her knowledge and acquiescence.

5. Lisa Jordan had two sets of keys for her vehicle; she kept one set in her possession and one in her kitchen.

6. Buchanan had access to the keys in the kitchen during the time he resided with Jordan.

7. In the several weeks prior to January 18, 2007, Eric Buchanan stopped taking

medication that he had been prescribed for paranoid schizophrenia.

8. During that time, his behavior was increasingly erratic. For example, he tore up Lisa Jordan's house, and he assaulted Lisa Jordan's daughter Ashley.

9. Buchanan's mother became concerned about his behavior, so much so that she drove him to Wishard Hospital, hoping she could convince him to admit himself for inpatient psychiatric treatment.

10. Buchanan refused to admit himself, and instead wound up being arrested for trespass after he refused to stop smoking on Wishard property on January 13, 2007.

11. Upon arrest, officials discovered that Buchanan had an outstanding warrant from Grant County, and he was taken to the Grant County Jail.

12. His mother and uncle bailed him out of the Grant County Jail and returned him to Indianapolis on January 16, 2007.

13. Buchanan contacted Jordan upon his return but did not resume living with her.

14. During the evening of January 17, 2007, Lisa Jordan drove the 2002 Grand Am with her daughter, Ashley Jordan, to Adriana Foret's home at 447 Trowbridge, Indianapolis, Indiana.

15. Foret had a close relationship with Ashley and insisted Ashley stay with her to keep her away from Buchanan for the remainder of Ashley's pregnancy.

16. Foret met Ashley and Lisa Jordan at the car, and no one else was there.

17. All three entered Foret's house.

18. At the time she entered Foret's house, Lisa Jordan's purse, keys and insulin were in the Grand Am.

19. Lisa Jordan stayed a few minutes and then noticed her car was driving away.

20. Jordan chased the car and saw that Buchanan was driving.

21. Buchanan did not have Lisa Jordan's permission to take her car.

22. She called Buchanan's cell phone to request and/or demand that he return the car.

23. Buchanan responded to the call but did not return the car.

24. Throughout the night of January 17, 2007, Lisa Jordan and Adriana Foret called Buchanan and, those times that he answered the phone, demanded that he return the car.

25. Lisa Jordan made arrangements for her parents to pick her up from Foret's house after they got off work the afternoon of January 18, 2007.

26. On the afternoon of January 18, 2007, Foret's boyfriend, David Terhune, called the police to report Lisa Jordan's car stolen.

27. The police responded to Foret's house, and later to Lisa Jordan's house.

28. Jordan asked for IMPD police Officer McAllister to clear the house to make sure Buchanan was not there as she was fearful of him. She also reported her car stolen.

29. McAllister's police report states that Lisa Jordan "lent" her vehicle to Buchanan.

30. During the day of January 18, 2007 Buchanan smoked marijuana.

31. During the relevant time period, Buchanan was experiencing a psychotic episode.

32. Around the time of the accident, Buchanan was delusional, and was convinced that his cousin was about to be killed.

33. Buchanan drove at a high rate of speed to his cousin's house.

34. The accident occurred as Buchanan was en route to his cousin's house.

35. At the time of the accident, Buchanan had been off his psychiatric medication for approximately one month and was increasingly symptomatic during that time period.

36. Buchanan was never charged with vehicular theft or convicted of driving with a suspended license as a result of the collision.

## II.  Conclusions of Law

### A.  Indiana's Permissive User Law

Indiana law states that:

No . . . policy shall be issued or delivered in this state to the owner of a motor vehicle, by any domestic or foreign corporation, insurance underwriters, association or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, expressed or implied, of such owner.

Ind. Code 27-1-13-7(a) (West 2004).  In order to comply with this statutory requirement, policies issued in the state of Indiana usually include an omnibus clause in the insured's insurance policy. The clause essentially extends coverage under the policy to anyone the insured permits, expressly or impliedly, to use the insured vehicle.

As noted, the relevant portion of the State Farm Policy's omnibus clause states:

> **LIABILITY COVERAGE**
> **Insured means**:
> . . .
> any other person for his or her use of:
>     a.  your car;
>     b.  a newly acquired car;
>     c.  a temporary substitute car; or
>     d.  a trailer while attached to a car described in a., b., or c.
>         above.
> Such vehicle must be used within the scope of your consent . . . .

In Indiana, the rules of construction for contracts are also used for insurance policies. *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004) (citing *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000)).  The interpretation of an insurance policy is a question of law and in interpreting an insurance policy, the goal is to ascertain and enforce the parties' intent as manifested in the contract.  *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006).  If language is clear and unambiguous, the policy language is to be given its plain and ordinary meaning.  *Id.*

Applying those maxims to the policy at issue here, Mr. Buchanan was an insured entitled to coverage for his use of Ms. Jordan's car if the "vehicle [was] used within the scope of [Ms. Jordan's] consent."

Moreover, Indiana follows the "liberal rule," in interpreting omnibus clause provisions

concerning permissive use. The liberal rule provides:

> one who has permission of an insured owner to use his automobile continues as such a permittee while the car remains in his possession, even though that use may later prove to be for a purpose not contemplated by the owner when he entrusted the automobile to the use of such permittee.

*Manor v. Statesman Ins. Co.*, 612 N.E.2d 1109, 1113 (Ind. Ct. App. 1993) (quoting *Arnold v. State Farm Mut. Auto. Ins. Co.*, 260 F.2d 161, 165 (7th Cir. 1958)).

This declaratory judgment action hinges on one question: whether State Farm has proved by a preponderance of the evidence that Eric Buchanan did not use Lisa Jordan's vehicle with her permission on January 18, 2007.

### B.  Application of Relevant Law to Facts.

Permissive use is a prerequisite for coverage under the omnibus clause. *See generally Carolina Cas. Ins. Co. v. E.C. Trucking*, 396 F.3d 837, 843 (7th Cir. 2005) (finding no coverage under insurance policy because no permission obtained from insured to use a semi-trailer involved in the underlying accident). Thus, there must be some form of permission granted before there is any coverage. In addition to express permission, an insured can impliedly permit the use of her vehicle. For example, implied permission was found where evidence was presented showing the permittee's prolonged, frequent and habitual use of an insured vehicle without any objection by the insured. *Am. Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 786 (Ind. Ct. App. 2002). In *Hall*, the permittee had ready access to the car keys and there was no statement or act by the insured restricting the permittee's use or a withdrawal of permission to use the vehicle. *Id.*

The Court finds *Hall* inapposite to the facts here. As of January 17, 2007, Jordan and

Buchanan had lived together approximately four weeks, hardly the "prolonged, frequent and habitual use" that gave rise to coverage in *Hall*. And while Lisa Jordan had in the past given Buchanan express permission to use her Grand Am prior to the collision, no permission was granted on January 17, 2007. At that time, Jordan's and Buchanan's relationship was estranged because of his escalating mental health symptoms and his assault on Ashley. He did not drive Lisa and Ashley to Foret's home,[a] but instead took the Grand Am from where Lisa Jordan parked it. Her protests and demands for the Grand Am's return were immediate and insistent.

Buchanan's testimony to the contrary simply cannot be credited. It was uncontroverted that as of January 17 and 18, 2007, Buchanan had been off his prescribed psychiatric drugs for over a month. He smoked marijuana on the day of the collision. Because of his significant mental health issues, Buchanan may genuinely believe he had Jordan's permission. But the weight of the evidence compels the opposite conclusion.

---

[a] Even if Court were to find that Eric Buchanan did take Lisa Jordan to Adriana Foret's house, or had some other implied permission to use the vehicle, Jordan repeatedly and insistently – for over 18 hours – both told and tried to tell Buchanan to return the car. He did not. State Farm directs the Court to authority from jurisdictions other than Indiana that would undermine Buchanan's claim of permission, even if the Court were to believe that he drove Lisa Jordan to Foret's home or took the car from that location with some form of implied permission. The cases discuss the factors that would support a finding that an owner may revoke permission. *Valor Ins. Co. v. Torres*, 708 N.E.2d 566, 569 (Ill. App. Ct. 1999) (prior permissive driver repeatedly told not to drive, and no requirement that keys be hidden); *Inter-Ins. Exch. of the Chicago Motor Club v. Travelers Indem. Co.*, 206 N.E.2d 518 (Ill. App. Ct. 1965) (running to the car, pounding on the car and shouting for the driver to stop); *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 404 A.2d 349 (N.J. Super. Ct. App. Div. 1979) (confronting the originally permissive driver and demanding the return of the vehicle); *Grinnell Mut. Reinsurance Co. v. Farm & City Ins. Co.*, 616 N.W.2d 353 (N.D. 2000) (telling a prior permissive driver they no longer have permission to use a vehicle). Had the Court found that Buchanan had driven the car to Foret's house with Jordan's permission or found implied permission based on past use, the principles of revocation may well have provided an alternative basis for a denial of coverage.

The Court recognizes that Officer McAllister's report states that Lisa Jordan told him she loaned her car to Buchanan. Jordan denied making that statement and explained that officer had told her that because she knew Buchanan, he could not be charged with auto theft, only conversion. McAllister confirmed that he had given such advice in the past, though he could not specifically recall saying that to Ms. Jordan. There would be no way for Ms. Jordan to know of McAllister's view of the potential charges, however, had he not made the comment to her.

The only other evidence that supports Buchanan's version is testimony from one of Lisa Jordan's neighbors, Shirley Alberts. Ms. Alberts testified that Lisa Jordan told her she loaned Buchanan the Grand Am. But Alberts was effectively impeached on cross-examination as to her memory of the timing of the relevant events.

State Farm bears the burden of proof that any exclusion in the Policy applies to Eric J. Buchanan for this claim. *Zebrowski & Assoc. v. City of Indianapolis*, 457 N.E.2d 259, 262 (Ind. Ct. App. 1983); *see also Palace Entm't, Inc. v. Bituminous Cas. Corp.*, 793 F.2d 842, 844 (7th Cir. 1986). Based on the facts found, the Court finds that State Farm has met its burden. A preponderance of the evidence establishes that Eric Buchanan was not a permissive user of Lisa Jordan's vehicle at the time of the collision with Defendants Michelle Brown, Kayla Brown and Meisha Goodlow even under Indiana's liberal rule.

Judgment shall issue declaring that State Farm Mutual Automobile Insurance Company owes no duty of defense or coverage for the accident involving Eric Buchanan, Michelle Brown, Kayla Brown and Meisha Goodlow.


12/03/2009

_____
Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution:**

James A Goodin Jr.
GOODIN ABERNATHY LLP
jgoodin@gamlawyers.com

John W. Tousley
THE TOUSLEY LAW OFFICE
jtousley@tousleylaw.com

Elizabeth J. Wysong
GOODIN ABERNATHY LLP
ewysong@gamlawyers.com

ERIC J. BUCHANAN
DOC #195589
Plainfield Correctional Facility
727 Moon Road
Plainfield, IN 46168